Joseph Arias, SBN 47399
ARIAS & LOCKWOOD, APLC
1881 S. Business Center Drive, Suite 9A
San Bernardino, California 92408
Joseph.Arias@ariaslockwood.com
(909) 890-0125 - Phone
(909) 890-0185 - Fax

Attorneys for Defendant, SPICE DELIGHT, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELEANOR BURKE, an individual, | CASE NO.: 8:20-cv-00824-DFS |
| Plaintiff, | [Hon. Dale S. Fischer] |
| vs. | NOTICE OF MOTION AND MOTION TO DISMISS THE STATE LAW-BASED CLAIMS (SECOND CAUSE OF ACTION) OF THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; and DECLARATION OF JOSEPH ARIAS |
| SPICE DELIGHT, INC., a California corporation; and DOES 1-10, Inclusive, | |
| Defendants. | |
| | Date:        September 14, 2020 |
| | Time:        1:30 p.m. |
| | Courtroom: 7D |

Notice is hereby given that on September 14, 2020, at 1:30 p.m., in Courtroom 7D, or as soon thereafter as counsel may be heard by the above-entitled Court, located at 350 West 1st Street, Los Angeles, California, before Judge Dale S. Fisher, Defendant, Spice Delight, Inc. will and hereby does move the Court for an order dismissing the state law-based claims (the Second Cause of Action). This motion is brought on the grounds there are compelling reasons for declining the exercise of supplemental jurisdiction.

///

///

ARIAS & LOCKWOOD
1881 S. Business Center Drive, Suite 9A
San Bernardino, California 92408

1

1    This motion is based on this Notice of Motion and Motion, the Memorandum

2    of Points and Authorities filed herewith, the Declaration of Joseph Arias, the pleadings

3    and papers on file herein, and upon such other evidence or argument as may be

4    presented to the Court at the time of the hearing.

5

6    DATED: August 6, 2020                          ARIAS & LOCKWOOD

7

8                                            By_____

9                                               Joseph Arias
                                               Attorneys for Defendant
                                               Spice Delight, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES

IN SUPPORT OF MOTION TO DISMISS THE STATE LAW-BASED CLAIMS

(SECOND CAUSE OF ACTION)

I.  The District courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if there are compelling reasons for declining jurisdiction.

Fed. R. Civ. P., Rule 1367 (c).

II.  There are compelling reasons for declining supplemental jurisdiction in this case because:

A.  The Americans with Disabilities Act and Unruh Act Claims

The Americans with Disabilities Act ("ADA") prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182 (a). Under the ADA "damages are not recoverable … only injunctive relief is available." *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) (citing 42 U.S.C. §12188 (a) (1)).

The Unruh Act provides that all persons in California, "no matter what their … disability … are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code §51 (b). A violation of the ADA constitutes a violation of section 51 of the Unruh Act. *Id.* §51 (f). Unlike the ADA, however, the Unruh Act allows for recovery of monetary damages for each and every offense, "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4000)." *Id.*

1   §52 (a). Here, according to the prayer of the complaint, Plaintiff seeks $8,000 in

2   statutory damages under the Unruh Act.

3

4   **B.** California's Limitations on the Filing of Construction-related

5   Accessibility Claims

6   The California legislature has worked hard to protect business owners against

7   serial filers and vexatious litigation. "In 2012, in an attempt to deter baseless claims

8   and vexatious litigation, California adopted heightened pleading requirements for

9   disability discrimination lawsuits under the Unruh Act." *Velez v. Il Fornaio (America)*

10  *Corp.*, 2018 WL 6446169, at *6 (S.D. Cal. Dec. 10, 2018). These heightened pleading

11  requirements to actions alleging a "construction-related accessibility claim," which is

12  defined as "any civil claim in a civil action with respect to a place of public

13  accommodation, including but not limited to, a claim brought under Section 51, 54,

14  54.1, or 55, based wholly or in part on an alleged violation of any construction-related

15  accessibility standard." Cal. Civ. Code §55.52 (a) (1). Unlike complaints filed in

16  federal court, California's heightened standard requires a plaintiff asserting a

17  construction-related accessibility claims to include specific facts concerning the claim,

18  including the specific barriers encountered or how the plaintiff was deterred and each

19  date on which the plaintiff encountered each barrier or was deterred. See California

20  Code of Civil Procedure, §425.50 (a). A complaint alleging a construction -related

21  accessibility claim must be verified, or is subject to a motion to strike. *Id.* §425.50

22  (b)(1).

23  When California continued to experience large numbers of these types of

24  actions, it imposed additional limitations on "high-frequency litigants," which became

25  effective on October 15, 2015. Under California law, a "high frequency litigant" is

26  defined as:

27  ///

28  ///

A plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12 month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation.

*Id.* §425.55(b)(1). Attorneys may also fall within the definition of "high-frequency litigants." See *Id.* §425.55(a)(2).

In support of these additional requirements on high-frequency litigants, the California Legislature found and declared:

According to information from the California Commission on Disability Access, more than one half or 54% of all construction-related accessibility complaints filed between 2012 and 2014 were filed by two law firms. Forty-six percent of all complaints were filed by a total of 14 parties. Therefore, a very small number of plaintiffs have filed a disproportionately large number of the construction-related accessibility claims in the state, from 70 to 300 lawsuits each year. Moreover, these lawsuits are frequently filed against small businesses on the basis of boilerplate complaints, apparently seeking quick cash settlements rather than correction of the accessibility violation. This practice unfairly taints the reputation of other innocent disabled consumers who are merely trying to go about their daily lives accessing public accommodations as they are entitled to have full and equal access under the state's Unruh Civil Rights Act (Section 51 of the Civil Code) and the Federal Americans with Disabilities Act of 1990 (Public Law 101-336).

California Code of Civil Procedure, §425.55(a)(2). In response to these "special and unique circumstances," *id.* §425.55 (3), California imposed a "high-frequency litigant fee" that requires high frequency litigants to pay a $1,000 filing fee at the time of the filing of the initial complaint in addition to the standard filing fees of *$436 (see Cal. Gov't Code §70616.5), for a total filing fee of nearly $1,500, a far cry from the

MOTION TO DISMISS STATE LAW CLAIMS

1 cost of filing a complaint in the federal courts. California law also requires high
2 frequency litigants to allege certain additional facts, including whether the action is
3 filed by, or on behalf of, a high-frequency litigant, the number of construction-related
4 accessibility claims filed by the high-frequency litigant in the preceding 12 months, the
5 high-frequency litigant plaintiff's reason for being in the geographic area of the
6 defendant's business, and the reason why the high-frequency litigant plaintiff desired
7 to access the defendant's business. See California Code of Civil Procedure
8 §425.50(a)(4)(A).

9

10         C.    Supplemental Jurisdiction

11       In an action over which a district court possesses original jurisdiction, that court
12 "shall have supplemental jurisdiction over all other claims that are so related to claims
13 in the action within such original jurisdiction that they form part of the same case or
14 controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a).
15 District courts have discretion to decline to exercise supplemental jurisdiction if:

16       (1)  the claim raises a novel or complex issue of State law,

17       (2)  the claim substantially predominates over the claim or claims over which
18       the district court has original jurisdiction,

19       (3) the district court has dismissed all claims over which it has original
20       jurisdiction, or

21       (4) in exceptional circumstances there are other compelling reasons for
22       declining jurisdiction.

23

24       *Id.* §1367(c).

25       The U.S. Supreme Court has described 28 U.S.C. section 1367(c) as a
26 "codification" of the principals of 'economy, convenience, fairness, and comity' that
27 underlie the Supreme Court's earlier jurisprudence concerning pendent jurisdiction.
28 *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997) (quoting

1  Carnegie-Mellon Univ. v. & Cohill, 484 U.S. 343, 357 (1988)); see also *United Mine*
2  *Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("It has consistently been recognized that
3  pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification
4  lies in considerations of judicial economy, convenience and fairness to litigants; if
5  these are not present a federal court should hesitate to exercise jurisdiction over the
6  state claims, even though bound to apply state law to them.

7      Needless decisions of state law should be avoided both as a matter of comity and
8  to promote justice between the parties, by procuring for them a surerfooted reading of
9  applicable law." The supplemental jurisdiction statute "reflects the understanding that,
10  when deciding whether to exercise supplemental jurisdiction, 'a federal court should
11  consider and weigh in each case, and at every stage of the litigation, the values of
12  judicial economy, convenience, fairness, and comity.'" *Int'l Coll. Of Surgeons*, 522
13  US at 173 (quoting from *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. at 350).

14      The Ninth Circuit does not require an "explanation [of] a district court's reasons
15  [for declining supplemental jurisdiction] when the district court acts under" 28 U.S.C.
16  sections 1367(c)(1)-(3). *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470,
17  478 (9th Cir. 1998). However, when a district court invokes section 1367 (c) (4), it must
18  "articulate why the circumstances of the case are exceptional in addition to inquir[e]
19  whether the balance of the Gibson values provide compelling reasons for declining
20  jurisdiction in such circumstances." *Executive Software N. Am. Inc. v. U.S. Dist. Court*
21  *for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1558 (9th Cir. 1994). According to the Ninth
22  Circuit, this "inquiry is not particularly burdensome." *Id.*

23

24      D.    The Court Should Decline to Exercise Supplemental Jurisdiction over
25            Plaintiff's Unruh Act Claim (the Second Cause of Action)

26      Because California's heightened pleading standards and increased filing fees do
27  not apply in federal court, plaintiffs can easily circumvent the restrictions that
28  California has imposed on construction-related accessibility claims under the Unruh

1  Act by relying on section 1367(a)'s grant of supplemental jurisdiction to file their
2  Unruh Act claims in federal court in combination with an ADA claim for injunctive
3  relief. It is a well-known fact that the number of construction-related accessibility
4  claims filed in the Central District has skyrocketed both numerically and as a
5  percentage of total civil filings since California began its effort to curtail the filing of
6  such actions. According to statistics compiled by the Clerk's Office, in 2013, the first
7  year in which California's initial limitations on such cases were in effect, there were
8  419 ADA cases filed in the Central District. That number constituted 3% of the civil
9  actions filed. Filings of such cases increased from 928 (7% of civil cases) in 2014, the
10 year before the imposition of the additional $1,000 filing fee and additional pleading
11 requirements for high-frequency litigants, to 1386 (10% of civil cases) in 2016, the
12 first full year of those requirements. The number and percentage of such cases filed in
13 the Central District has increased each year since California acted to limit filings by
14 high-frequency litigants, reaching 1,670 (12% of civil cases) in 2017, and 1670 (18%
15 of civil cases) in 2018, and 1868 cases (24% of civil cases) in the first six months of
16 2019.

17      By enacting restrictions on the filing of construction-related accessibility claims,
18 California has expressed a desire to limit the financial burdens that California's
19 businesses may face from claims for statutory damages and attorneys' fees under the
20 Unruh Act. By filing this action in federal court, Plaintiff has evaded these limits and
21 claimed a state law damages in a manner inconsistent with the state law's requirements.
22 This situation, and the burden that the ever-increasing number of such cases poses to
23 the federal courts, present "exceptional circumstances" and "compelling reasons" that
24 justify the Court's decision to decline to exercise supplemental jurisdiction over
25 Plaintiff's Unruh Act claim in this action under 28 U.S.C. §1367(c)(4).
26 ///
27 ///
28 ///

1    Declining to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim
2    in these circumstances supports the values of judicial economy, convenience, fairness
3    and comity. See *Schutza v. Cuddelback*, 262 F. Supp. 3d 1025, 1031 (S.D. Cal 2017)
4    ("[The Court finds it would be improper to allow Plaintiff to use federal court and as
5    an end-around California's pleading requirements... as a matter of comity, and in
6    deference to California's substantial interest in discouraging unverified disability
7    discrimination claims ...[1]") See also *Gibbs*, 383 U.S. at 726.
8
9        E.    Burke Filed This Action in Federal Court As a Means of Forum Shopping
10             Which Should Be Discouraged
11    Inasmuch as plaintiff can only recover injunctive relief under the ADA, it
12    becomes clear she brought this action in this court to avoid the state-imposed pleading
13    requirements given she is also entitled to injunctive relief under the Unruh Act. Federal
14    courts may properly take measures to discourage forum-shopping and dismissing the
15    Unruh Act claim achieves that objective. *Schutza*, 262 F. Supp. 3rd at 1031 (citing
16    *Hanna v. Plumer*, 380 U.S. 460, 467-68 (1965))
17
18        F.    As Well, the Court Should Decline to Exercise Supplemental Jurisdiction
19             Because the Unruh Act Claim Predominates over the ADA Claim
20    Plaintiff's Unruh act allegations, if proven, would entitle plaintiff to a minimum
21    of $8,000 in statutory damages ($4,000 for actual disability-based discrimination and
22    an additional $4,000 for deterrence damages) plus attorney fees and costs. In contrast,
23    under the ADA Plaintiff would only be entitled to injunctive relief. See *Reyes v.*
24    *Flourshings Plus, Inc.*, 2019 WL 1958284, at*2 (SD Cal May 2, 2019) ("The monetary
25    damages Plaintiff seeks under the Unruh Act, ... substantially predominate over his
26    request for injunctive relief under the ADA."); *id* at*3.
27
28    _____

[1] Burke's Complaint is unverified.

9                    MOTION TO DISMISS STATE LAW CLAIMS

1   Importantly, exercising the Court's discretion to decline supplemental
2   jurisdiction does not deprive Plaintiff of any remedies. Nor does it allow an ADA claim
3   for injunctive relief to go unaddressed. If the court declines to exercise supplemental
4   jurisdiction, the ADA claim will remain pending in this court.

5   There is no relief available to plaintiff in federal court that could not be secured
6   in state court. Had she brought this suit in state court, there would have been only one
7   suit pending and she would have been eligible to receive every form of relief she seeks
8   in this Court: an injunction, money damages, and attorney's fees. By declining to
9   exercise supplemental jurisdiction, this court is recognizing that that California has a
10  strong interest in interpreting and enforcing its own rules without federal courts
11  serving as a convenient end-around for creative litigants. Finally, by declining to
12  exercise supplemental jurisdiction, this court will be restoring the balance Congress
13  struck when it enacted the ADA and provided a right of action for injunctive relief and
14  an award of attorney's fees, but did not allow for the recovery of statutory damages.

15

16  III.   CONCLUSION

17  In light of the foregoing, this court, in its discretion, should issue an order
18  declining to exercise supplemental jurisdiction over the plaintiff's Unruh Act claim,
19  and thereby dismiss it. See 28 U.S.C. §§1367(c)(2) & (c)(4).

20

21  DATED: August 6, 2020                         ARIAS & LOCKWOOD

22

23                                                By_____
                                                      Joseph Arias
24                                                    Attorneys for Defendant
                                                      Spice Delight, Inc.
25

26

27

28

                                      10          MOTION TO DISMISS STATE LAW CLAIMS

1

## DECLARATION OF JOSEPH ARIAS

2

3      I, Joseph Arias, declare as follows:

4          Prior to filing the instant Motion to Dismiss the State Law-Based Claims, I

5   conferred by telephone with plaintiff's counsel, Phyl Grace, several times (at least three

6   times) and also exchanged multiple emails, about dismissing the California state

7   law-based claims. Ms. Grace is unwilling to stipulate to dismiss those claims.

8

9          I declare under the penalty of perjury, under the laws of the State of California,

10  that the contents of this declaration are true and correct. Executed this 6th day of June

11  2020, at San Bernardino, California.

12

13                                          _____

14                                          Joseph Arias

15

16

17

18

19

20

21

22

23

24

25

26

27

28